IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHELLE E. DESOUSA, et al.,

Plaintiffs,                                        Civil Action No. 24-1653

v.

SMART726, *et al*.,                                **(Judge Stickman)**

Defendants.

**MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Plaintiff[1] submits this Memorandum in Support of its Motion for Default Judgment

pursuant to Fed. R. Civ. P. 55 (b)(2) seeking entry of Judgment against the defaulting Defendants

("Defendants")[2] on all Counts of the Complaint.

## I.      INTRODUCTION

This memorandum is filed in support of the lawsuit (as set forth in the caption above) that

the Plaintiff brought seeking relief from the tireless efforts of the online copycats trying to

destroy Plaintiff's business.

In this case, Defendants are sellers of infringing products on at least one of the online

marketplaces operated by Amazon.com, eBay.com, Temu.com, Wish.com, Walmart.com, and

Aliexpress.com online marketplaces, Defendants engaged in (Count I) patent infringement;

---

[1] The singular use of Plaintiff refers collectively to the Plaintiffs, Michelle E. DeSousa, Jose De Jesus De Sousa, and BraNovations, Inc.

[2] This motion does not resolve all the claims in the case with all the Defendants. There are some Defendants that are not defaulted and are still in negotiations with Plaintiff. Should these negotiations not resolve the outstanding claims, Plaintiff reserves the right to file a motion to amend and include these defendants in a final judgment.

(Count II) false designation of origin, passing off and unfair competition pursuant to § 43(a) of the Lanham Act; and (Count III) common law unfair competition.[3]

The remaining Defendants in this lawsuit have all defaulted and failed to cooperate in discovery. The Defendants have been properly served pursuant to Fed. R. Civ. P. 4 and are aware of this action, but nevertheless chose not to respond.  The Clerk has entered default.  The Plaintiff also served discovery upon Defendants, including Requests for Admission, and no response to the discovery was received.

By their default, Defendants have conceded the truth of the allegations of the Complaint. By their failure to respond to Requests for Admission, Defendants have admitted the matters therein.  There are no issues of fact remaining in this suit, and a default judgment should be entered against Defendants providing for permanent injunctive relief, an award of disgorgement of profits of $3,000,000.00 ($1,000,000.00 trebled for intentional infringement) under the Patent Act, against each individual Defendant as listed on Schedule A for their intentional unfair competition, a post-judgment asset restraining order, and an order authorizing the release and transfer of Defendants' assets from the Third-Party Service Provider(s) and Financial Institution(s) to satisfy the damages, in whole or in part, awarded to Plaintiff.[4] Courts in the Western District of Pennsylvania have previously entered a default judgment against each defendant in this amount or more using a similar method for proving and calculating damages that is used here. *See, e.g., Airigan Solutions, LLC v. Rainbow Island Store, et al.*, No. 23-1327

---

[3]    While the evidence proves that all of the Defendants in Schedule A have infringed upon at least one claim of Plaintiff's Patent, only Defendant Nos. 66, 116, 117, 118 have used one or more of Plaintiff's Works to advertise, promote and sell their Infringing Products, thus unfairly competing under federal and Pennsylvania law.

[4]    Though Plaintiff is not waiving its claims under the Lanham Act and Pennsylvania unfair competition law, Plaintiff elects to seek a disgorgement of profits under the Patent Act because the identical profits are being claimed under the Lanham Act and under Pennsylvania unfair competition law.

- 2 -

(W.D. Pa., October 2, 2023)(Stickman, J.); *Talisman Designs LLC v. Ladynana US*, No. 22-994 (W.D. Pa. October 20, 2022)(Schwab, J); *Doggie Dental, Inc. v Ahui, et al.*, No. 19-cv-1627 (W.D. Pa., Sept. 27, 2021) (Hornak, CJ); *Osprey LLC v. Poolwhale, et al.*, No. 20-cv-1253 (W.D. Pa. December 3, 2020) (Hardy, J); *Doggie Dental, Inc. v. Anywill*, et al., No. 19-cv-682 (W.D. Pa. August 14, 2020 (Hornak, CJ); and *Doggie Dental, Inc. v. Anywill, et al.*, No. 19-cv-746 (W.D. Pa. August 14, 2020 (Hornak, CJ).

**A.    This court has jurisdiction to enter default judgment against Defendants.**

This Court has jurisdiction to grant Plaintiff's motion and enter default judgment against Defendants because the Court has subject matter jurisdiction over this action as well as personal jurisdiction over the Defendants. This Court has subject matter jurisdiction over this action pursuant the Lanham Act, and the Patent Act.  15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.  *See Complaint*, ¶ 1 [ECF No. 3].

Personal jurisdiction may be established either by specific or general jurisdiction, but specific jurisdiction is appropriate in this case because of Defendants' contact with the forum. *See* 42 P. A. Cons. Stat. § 5322. The factors to consider when establishing specific jurisdiction are: "(1) the extent to which defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the Plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir.1998). Defendants satisfy each of the factors to establish specific personal jurisdiction.

First, Defendants purposefully availed themselves of the privilege of conducting business in Pennsylvania and this Judicial District. Defendants purposefully targeted sales of infringing products to Pennsylvania residents, and did in fact sell infringing products into Pennsylvania. *See Complaint,* ¶ 11 [ECF No. 3]. These actions are sufficient to establish jurisdiction over Defendants. 42 Pa. Cons. Stat. § 5322 (a). Second, Plaintiff's claims arise directly from actions that occurred in this Judicial District. Plaintiff purchased infringing products to determine their authenticity and had the infringing products shipped to Pennsylvania. *See Declaration of Dee Odell* [ECF No. 16]. These unauthorized and unlicensed sales of infringing products in this Judicial district establish this Court's jurisdiction over Defendants.

Lastly, this Court's exercise of specific personal jurisdiction over Defendants is "reasonable" under the constitution. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The record in this case does not suggest that the burden of litigation in this District is extraordinary. Defendants offered to ship and sell their infringing products to any part of the United States. *See Complaint,* ¶ 11 [ECF No. 3]. Pennsylvania and this Court have a valid interest in the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of [Pennsylvania] law. *See Square D Co. v. Scott Elec. Co.*, No. 06-459, 2008 WL 4462298, at *12 (W.D. Pa. Sept. 30, 2008). Plaintiffs have a valid and substantial interest in having their legal rights recognized and vindicated. *Id*. Therefore, this Court's exercise of specific personal jurisdiction over Defendants is constitutionally reasonable.

**B. Joinder of the Defendants is appropriate.**

Joinder of the defendants is proper when plaintiff seeks relief "jointly, severally, or in the alternative with respect to arising out of the same transaction, occurrence or series of transactions or occurrences;" and "any question of law or fact common to all defendants will arise in the

action." Fed. R. Civ. P. 20(a)(2).  There is no difference in the analysis under either Rule 20 or 35 U.S.C. § 299 of the Patent Act.  *See* 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl observing that Section 299 "effectively codifies current law as it has been applied everywhere outside of the Eastern District of Texas").  Joinder is consistent with the strongly encouraged policy of "entertaining the broadest possible scope of action consistent with fairness to the parties." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715. 724 (1966).

In a decision on joinder in an online counterfeiting case, the Northern District of Illinois found joinder was appropriate, stating:

> According to the Merriam-Webster dictionary, "transaction" generally involves a "reciprocal effect" or "exchange," whereas an "occurrence" is defined as something that simply "happens" or "appears." Unlike a "transaction," an "occurrence" is not necessarily the product of joint or coordinated action. The internet frequently produces occurrences that can be described as cooperative but not transactional or intentionally coordinated. Individual actions which alone may have minimal impact on society or the economy can have a substantial impact through aggregation that is only possible through the internet. Individuals on the internet can openly reach billions of people with a single click of a mouse, while at the same time hiding their identities, frustrating law enforcement. As a result, an "occurrence" of mass harm easily can be inflicted even if there is no express "transactional" coordination among the attackers.
>
> Rule 20's inclusion of the term "occurrence" should allow plaintiffs to join in a single case the defendants who participate in such unlawful occurrences, despite the lack of a "transactional link." The kind of harmful occurrences the internet enables — including mass foreign counterfeiting — were inconceivable when Rule 20 was drafted. But the Rule's inclusion of the term "occurrence" suggests that joinder is appropriate in cases alleging harm that is not strictly "transactional." *Bose Corp. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 19-cv-7467 (N.D. Ill. Feb. 19, 2020) (Durkin, J.) at 10-11 [DE 46].

Moreover, in the present case there is something more -- the admitted allegations of the Complaint (*i.e.*, cooperating, communicating, coordinating with a common goal of creating one illegal competing marketplace).  These additional activities further establish the necessary commonality to join the defendants into one action under either Rule 20 or Section 299.  Thus,

the well-pled factual allegations of Plaintiff's Complaint properly allege the elements for joinder and the Defendants are properly joined in this case.

Recognizing this, in the *Doggie Dental, Inc. v. CDOFFICE, et al*, No. 21-cv-271, Chief Judge Hornak ruled joinder of the Defendants was permissible because the Complaint sufficiently alleged the right to relief against the joined defendants arises **"out of the same** transaction, occurrence, or series of transactions or occurrences,' and that are "questions of law or fact common to all the defendants." [ECF No. 126]. For at least these reasons, the Defendants are properly joined in this case. *See also Aquapaw v. Allnice,* No. 20-1954 (W.D. Pa, July 29, 2022) (Wiegand, J.) [ECF No. 85] (joinder of patent defendants appropriate when accused products or processes are the same in respects relevant to the patent).

### B.       Plaintiff is entitled to a default judgment against Defendants.

### 1.       The Clerk properly entered default as to Defendants.

The Clerk of this Court enters a default "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  The Clerk entered default against Defendants because, as the docket reflects, the time for filing a responsive pleading expired.

### 2.       Factual allegations establish the defaulting Defendants' liability.

By failing to appear, contact Plaintiff, or otherwise defend against the Complaint, Defendants are deemed to have admitted every allegation therein, and the Court must only determine whether Plaintiff's Complaint properly states a claim for relief.  *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *see also Pair Networks, Inc. v. Lim*

*Cheng Soon*, 2013 WL 452565, *1 (W.D. Pa., February 6, 2013).

### A. Liability for Patent Infringement

Liability for patent infringement is established when a defendant "makes, uses, offers to sell, or sells any patent invention, or sells any patented invention within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271. The well-pled factual allegations of Plaintiff's *Complaint* [ECF No. 3], including specifically those in Paragraphs 64 - 68, properly allege the elements for each of the above claims. Furthermore, through its patent and detailed evidence of the Defendants' infringing products, Plaintiff has proven that the Infringing Products literally infringe all elements in claim 1 of U.S. Patent No. 9,968,211.

In addition to the well pled factual allegation, admitted by default, and established by the evidence, Defendants have also made certain admissions by failing to respond to the *Request for Admission* served upon them. *See Declaration of Brian Samuel Malkin in Support of Motion for Entry of Default Judgment and Permanent Injunction Judgment* ("*Malkin Dec in Support of DJ.*"), ¶ 5. These deemed admissions include the following:

> **At all times relevant hereto, Defendant knew that Plaintiff owned U.S. Patent No. 8,152,591 entitled "GARMENT AND BRASSIERE ACCESSORY", and certain photographs and artwork related to the promotion and packaging of Plaintiff's Product ("Plaintiff's Works"). Defendant knew that Plaintiff had the exclusive right to use and license its intellectual property and the goodwill associated therewith.**

> **Despite having the knowledge that you had no license or legal authority to do so, you engaged in the activity of promoting and otherwise advertising, selling, offering for sale, and/or distributing counterfeit goods under your Seller ID or Seller IDs.**

**At all times relevant hereto, you have been engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and/or sale of goods that are infringing copies of Plaintiff's Product.**

**You intentionally make, use, offer to sell, or import into the United States copies of Plaintiffs' Product with English language packaging and instructions.**

**There is no acceptable product that is an alternative to Plaintiff's Product that does not infringe at least one claim of the Plaintiff's Patent.**

**You willfully infringed at least on claim of the Plaintiff's Patent.**

**You used identical or substantially similar versions of Plaintiff's Works to advertise and promote your patent infringing products.**

## B. Liability for Unfair Competition

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Plaintiff must prove that the Defaulting Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of the Defaulting Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of the Defaulting Defendants' goods by Plaintiff. 15 U.S.C. § 1125(a)(1). In this case, the use of the photos, artwork and promotional materials Plaintiff uses to designate and advertise its goods. As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 2763 (1992).

Whether a defendant's use of plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Pennsylvania. *Mateson Chemical Corp. v.*

*Vernon,* 2000 WL 680020, at \*5 n. 7 (E.D.Pa. May 9, 2000).

It has long been established in the Third Circuit that unfair competition includes using a plaintiff's photographs to pass off knock-off products and divert sales from the plaintiff. In *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 650 (3d Cir. 1954), the Court found a Complaint properly pleaded a violation Section 43(a) of the Lanham Act when alleging that the defendant was using photographic reproductions of plaintiff's dress in order to sell its inferior, poor-quality knock-off of the same dress. In this case, all Defendants used a photograph of Plaintiff's product to sell their knock-off products. See *Odell Dec.*[5] [ECF No. 16]

Further, the test to determine trademark infringement liability under Pennsylvania common law is the same as the likelihood of consumer confusion test outlined in Section 32(a) of the Lanham Act. *See, e.g., Tillery v. Leonard & Sciolla LLP,* 521 F. Supp. 2d 346, 348 n.1 (E.D. Pa. 2007), *See also Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 472 (3d Cir.1994).

### 3. The damages are established by the evidence.

Defendants have made certain admissions about damages by failing to respond to the *Requests for Admissions* served upon them. *See Malkin Dec.*, ¶ 5. These deemed admissions include the following:

***You have sold more than 50,000 units of goods that infringe that infringe at least one claim of the Plaintiffs' Patent.***

***You made at least $20.00 profit on each infringing unit sold.***

Accordingly, a Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure considering the evidence on damages, as discussed below, should be

---

[5] Refers to *Declaration of Dee Odell* [ECF No. 16]

entered against the Defaulting Defendants.

### A. Plaintiff is entitled to disgorgement of profits under the Patent Act.

This lawsuit is for intentional patent infringement damages. In each lawsuit, Plaintiff is seeking an award of $3,000,000.00 (1,000,000.00 trebled against each Defendant for their intentional patent infringement).  *See Aquapaw LLC v. Allnice,* No. 20-1954 (W.D. Pa., July 29, 2022)(Wiegand, J.); *Aquapaw Brands LLC v. Flopet,* No. 21-988 (W.D. Pa., July 29, 2022)(Wiegand, J); *Aquapaw Brands LLC v. TikToks,* No. 21-696 (W.D. Pa., August 2, 2022)(Wiegand, J; *Doggie Dental, Inc. v AVANTDIGITAL,* No. 21-cv-271 (W.D. Pa., February 23, 2022)(Hornak, CJ); *Doggie Dental, Inc. v CDOFFICE,* No. 21-cv-565 (W.D. Pa., February 23, 2022)(Hornak, CJ); *Doggie Dental, Inc. v Ahui, et al*., No. 19-cv-1627 (W.D. Pa., Sept. 27, 2021 (Hornak, CJ).

Using the same methodology for calculating damages, Chief Judge Hornak awarded individual judgments of $2,128,500.00 against patent infringing defendants. *See Doggie Dental, Inc. v AVANTDIGITAL,* No. 21-cv-271 (W.D. Pa., February 23, 2022) (Hornak, CJ); *Doggie Dental, Inc. v CDOFFICE,* No. 21-cv-565 (W.D. Pa., February 23, 2022) (Hornak, CJ); *Doggie Dental v. Ahui*, No. 19-cv-1627 (W.D. Pa., September 27, 2021) (Hornak, CJ). Indeed, this Court has followed this methodology and awarded individual patent judgments of $1,800,000.00. *Broadway Pine Brands LLC v. Cococity*, No. 22-cv-510 (November 30, 2022)(Ranjan, J); *Broadway Pine Brands LLC v. Mustb Toy Store*, No. 21-cv-1665 (November 30, 2022)(Ranjan, J.); and *Broadway Pine Brands LLC v. Amtoy*, No. 22-cv-358 (November 30, 2022)(Ranjan, J).

The Plaintiff's evidence by way of the screenshots of the electronic storefronts provided in Composite Exhibit 1 to the Dee Odell Declaration filed in support of the Motion for the

Temporary Restraining Order proves that each Defendant offered the Infringing Product for sale into this district in Pennsylvania and that Plaintiff purchased the product.

Defendants admitted, by their failure to answer requests for admissions that they sold 50,000 infringing units receiving at least $20.00 profit for each infringing unit sale. That is admitted profits of $1,000,000.00. When that amount is trebled against each Defendant for their admitted intentional infringement, it comes to $3,000,000.00.

Proving lost profits damages first requires evidence that the infringer's activities directly led to the lost profits. "To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1542 (Fed. Cir. 1995). One way to show the reasonable probability occurred is by applying the "Panduit test: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made." *Rite-Hite Corp. v. Kelley Co.*, 56 F. 3d 1538, 1545 (Fed. Cir. 1995). Here, Plaintiff has offered its testimony by way of declaration plus the admissions of the Defendants in order to meet each of these elements.

In this case, Plaintiff have handily proven each of the elements required to recover lost profits through their patent, claims chart, testimony and the admissions of the Defendants. Defendants have not contested or put forth any evidence to contradict the Plaintiff's damages case as to the infringement of their patent.

Our Courts in this district and this Court have relied, in part, on admissions made though failure to answer in awarding damages against similar counterfeiting and infringing defendants in prior cases. *See Broadway Pine Brands LLC v. Cococity*, No. 22-cv-510 (November 30,

2022)(Ranjan, J); *Broadway Pine Brands LLC v. Mustb Toy Store*, No. 21-cv-1665 (November 30, 2022)(Ranjan, J.); and *Broadway Pine Brands LLC v. Amtoy*, No. 22-cv-358 (November 30, 2022)(Ranjan, J); *Aquapaw LLC v. Allnice, No. 20-1954 (W.D. Pa., July 29, 2022)(Wiegand, J.); Aquapaw Brands LLC v. Flopet, No. 21-988 (W.D. Pa., July 29, 2022)(Wiegand, J); Aquapaw Brands LLC v. TikToks, No. 21-696 (W.D. Pa., August 2, 2022)(Wiegand, J); Doggie Dental, Inc. v AVANTDIGITAL,* No. 21-cv-271 (W.D. Pa., February 23, 2022)(Hornak, CJ); *Doggie Dental, Inc. v CDOFFICE,* No. 21-cv-565 (W.D. Pa., February 23, 2022)(Hornak, CJ); *Doggie Dental, Inc. v Ahui, et al.*, No. 19-cv-1627 (W.D. Pa., Sept. 27, 2021 (Hornak, CJ); *Doggie Dental v. Anywill*, No. 19-cv-682 (W.D. Pa., August 14, 2020)(Hornak, CJ); *Doggie Dental v. Max_Buy*, 19-746 (W.D. Pa., August 14, 2020) (Hornak, CJ); *Doggie Dental v. Go Well*, 19-1282(W.D. Pa., August 14, 2020) (Hornak, CJ); and *Doggie Dental v. Worthbuye*r, 19-1283 (W.D. Pa., August 14, 2020) (Hornak, CJ).  It is submitted that the award sought in this case would achieve the purposes of punishment, deterrence, and parity with similar damage awards. This Court has recognized the importance of all of these points in its prior damage awards. *See id.*

As an example, a deemed admission of over two million dollars ($2,000,000) or more in profit to be disgorged is not objectively unreasonable.  In similar cases in this District the Court has awarded two million dollars ($2,000,000) in damages or more against each defendant.  Such an award serves the public interest in making the misconduct unprofitable, deterring future willful violations, and achieving parity in damage awards in this District. *See Broadway Pine Brands LLC v. Cococity*, No. 22-cv-510 (November 30, 2022)(Ranjan, J); *Broadway Pine Brands LLC v. Mustb Toy Store*, No. 21-cv-1665 (November 30, 2022)(Ranjan, J.); and *Broadway Pine Brands LLC v. Amtoy*, No. 22-cv-358 (November 30, 2022)(Ranjan, J);

*Aquapaw LLC v. Allnice,* No. 20-1954 (W.D. Pa., July 29, 2022)(Wiegand, J.); *Aquapaw Brands LLC v. Flopet*, No. 21-988 (W.D. Pa., July 29, 2022)(Wiegand, J); *Aquapaw Brands LLC v. TikToks*, No. 21-696 (W.D. Pa., August 2, 2022)(Wiegand, J); *Doggie Dental, Inc. v AVANTDIGITAL*, No. 21-cv-271 (W.D. Pa., February 23, 2022)(Hornak, CJ); *Doggie Dental, Inc. v CDOFFICE*, No. 21-cv-565 (W.D. Pa., February 23, 2022)(Hornak, CJ); *Doggie Dental, Inc. v Ahui, et al.*, No. 19-cv-1627 (W.D. Pa., Sept. 27, 2021 (Hornak, CJ); *See Doggie Dental v. Anywill*, No. 19-cv-682 (W.D. Pa., August 14, 2020) (Hornak, CJ); *Doggie Dental v. Max_Buy*, 19-746 (W.D. Pa., August 14, 2020) (Hornak, CJ); *Doggie Dental v. Go Well*, 19-1282 (W.D. Pa., August 14, 2020) (Hornak, CJ); and *Doggie Dental v. Worthbuyer*, 19-1283 (W.D. Pa., August 14, 2020) (Hornak, CJ).  *See Airigan Solutions, LLC v. Belvia,* No. 20-cv-284 (W.D. Pa., April 21, 2020) (Schwab, J.) ($2 million in damages against each defendant) [ECF No.  34]; *Airigan Solutions, LLC v. Abagail,* No. 19-cv-503 (W.D. Pa., Aug 13, 2019) (Fischer, J.) (same) [ECF No.  52], *Rapid Slicer LLC v. Art-House*, No. 19-411 (W.D. Pa., Jan. 9, 2020) (Horan, J.) (same) [ECF No.  44].

In short, since Plaintiff has proven that each Defendant has sold at least 50,000 infringing units, at $20.00 profit per unit, the total amounts having been supported by the fact and the law, the total damages awarded against each Defendant should be $3,000,000.00 ($1,000,000.00 profits trebled for intentional infringement).

**4. Plaintiff is Entitled to Permanent Injunctive Relief**

In addition to the foregoing relief, Plaintiff seeks entry of a permanent injunction enjoining Defendants from infringing or otherwise violating Plaintiff's rights in its patent, including at least all injunctive relief previously awarded to by this Court to Plaintiff in the temporary restraining order and preliminary injunction.  *See Evony, LLC v. Holland*, No. 2:11-

CV-00064, 2011 WL 1230405, at *7 (W.D. Pa. Mar. 31, 2011) ("In this case, Plaintiffs have achieved "actual success on the merits" through the admission of liability arising from Defendant's default. Furthermore, the Verified Complaint establishes that Defendant unlawfully sells and distributes copyrighted and trademarked material of the Plaintiffs. Nothing in the facts before the Court indicates that Defendant has ceased this infringing activity; thus, a permanent injunction is warranted in this case on all claims of the Verified Complaint.").  Plaintiff is also entitled to injunctive relief so it can can prompt action against any new online marketplace acounts or websites that are identified, found to be linking to Defendants, and selling Infringing Product.  A plaintiff is entitled to a permanent injunction under the Lanham Act, Patent Act, and Pennsylvania common law.  15 U.S.C. § 1116; 35 U.S.C. § 283; and *B&B Microscopes v. Armogida*, 532 F. Supp. 2d 744, 760 (W.D. Pa. 2007) (*citing Brody's, Inc. v. Brody Bros., Inc.*, 454 A.2d 605, 607 (Pa. Super. Ct.1982)).

A permanent injunction, like the damages under the Patent Act, would help deter other individuals or corporations from infringing Plaintiff's valuable trademark and patent rights. Additionally, entry of a permanent injunction against Defendants in this case will help expedite any future litigations between the defaulting Defendants and Plaintiff, if a case between the parties arises in the future.  This equitable result would be in the interest of justice and provide Plaintiff with more flexibility to protect its intellectual property rights.  As such, permanent injunctions are routinely entered by other Courts in similar online counterfeiting cases.  *See* n.3, *supra*, and cases therein and our Courts have agreed with that practice. *See*, *e.g.*, *Airigian v. Bufugiujan, et al.*, 18-cv-1330-NBF and *Airigan v. Artifacts-Selling, et al*, 18-cv-1462-NBF, and *Airigan v. Babymove*, *et al.*, 19-cv-166-NBF.

**5. Plaintiff Requests That This Court Order the Transfer to It of Remaining Assets in Defaulting Defendants' Accounts**

Plaintiff requested a temporary restraining order and preliminary injunction, *inter alia*, to prevent Defendants from transfering the funds held in their Third Party Service Provider(s) and Financial Institution(s) accounts beyond this Court's jurisdiction.[ECF No. 5] This Court granted the temporary restraining order and preliminary injunction, preventing Defendants from accessing the funds in their Third Party Service Provider(s) and Financial Institution(s) accounts. [ECF Nos. 20, 28] This Court found that Plaintiff had established a likelihood of success on the merits and irreparable harm in the absence of a temporary restraining order and preliminary injunction. *See Id.*

Plaintiff now requests that this Court order the Third Party Service Provider(s) and Financial Institution(s) to transfer to Plaintiff the assets currently held in the defaulting Defendants' Third Party Service Provider(s) and Financial Institution(s) accounts in partial payment of any award of damages. In the absence of such an Order, it is likely that Plaintiff will be left without any effective means by which to collect from Defendants any monetary judgment entered by this Court. As explained, previously, Defendants and any assets they won, other than those held in their respective Third Party Service Provider(s) and Financial Institution(s) accounts, are presumably located in China. There is no bilateral treaty or mulitlateral convention in force between the United States and any other country on reciprocal recognition and enforcement of judgments. Moreover, as explained in some detail previously, Defendants are involved in illegal counterfeiting operations and go to great lengths to conceal their identities and whereabouts. As a result, even in the unlikely event that Plaintiff could enforce a U.S.

- 15 -

judgment in the Chinese courts, it will be virtually impossible to locate Defendnats or any assets they may hold in order to satisfy any monetary damages awarded in this case.

Such orders are routinely entered by other Courts to satisfy monetary judgment awards in similar counterfeiting cases. *See*, *e.g.*, *Airigan Solutions, LLC v. Rainbow Island Store, et al.*, No. 23-1327 (W.D. Pa., October 2, 2023)(Stickman, J.), *Airigian v. Bufugiujan, et al.*, 18-cv-1330-NBF and *Airigan v. Artifacts-Selling, et al*, 18-cv-1462-NBF, and *Airigan v. Babymove*, *et al.*, 19-cv-166-NBF. Courts in other juridictions have also entered such transfer orders. *See, e.g., Eye Safety Sys., Inc. v. The Partnerships and Unicorporated Ass'ns. Identified in Schedule "A"*, Case No. 18-cv-00034 [D.E. 41] (N.D. Ill. Mar. 1, 2018) (ordering PayPal to transfer defendants' funds to plaintiffs as partial satisfaction of judgment); *Spin Master Ltd. v. The Unincorporated P'ships and Ass'ns. Identified in Schedule "A"*, Case No. 18-cv-01270 [D.E. 39] (N.D. Ill. Apr. 25, 2018) (same); *Levi Strauss & Co. v. The Unicorporated P'ships and Ass'ns. Identified in Schedule "A"*, Case No. 17-cv-04561 [D.E. 33] (N.D. Ill. Aug. 1, 2017) (same); *Yeti Coolers, LLC v. Taneil George*, Case No. 17-cv-62215 [D.E. 46] (S.D. Fl. Mar. 29, 2018) (same); *Mycoskie, LLC v. csmlong188*, Case No. 17-cv-60782 [D.E. 43] (S.D. Fl. Jul. 21, 2017) (same); *Fendi Adele, S.R.L. v. alma Hernandez*, Case No. 17-cv-62379 [D.E. 37] (S.D. Fl. Jan. 28, 2018) (same); *Burberry Ltd. v. The Partnerships and Unicorporated Ass'ns. Identified in Schedule "A"*, Case No. 17-cv-03255 [D.E. 37] (N.D. Ill. June 7, 2017) (same); *Louis Vutton Mallietier, S.A. v. Andrew Henry*, Case No. 17-cv-61034 [D.E. 40] (S.D. Fl. Aug. 22, 2017) (same); *Cartier Int'l A.G. v. Anotoky*, Case No. 17-cv-60831 [D.E. 38] (S.D. Fl. Jul. 6, 2017) (same); *Lacoste Alligator S.A. v. 6666 store*, Case No. 17-cv-60046 [D.E. 49] (S.D. Fl. Jun. 28, 2017) (same); *Gucci Am., Inc. v. 8710 t-*

*shirt shop*, Case No. 16-cv-63002 [D.E. 58] (S.D. Fl. Mar. 27, 2017) (same); and *Louis Vuitton Malletier, S.A. v. afste nxmu*, Case No. 17-cv-61819 [D.E. 39] (S.D. Fl. Dec. 12, 2017) (same).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Default Judgment; enter judgment against Defendants for (Count I) patent infringement; (Count II) false designation of origin, passing off and unfair competition pursuant to § 43(a) of the Lanham Act; and (Count III) common law unfair competition[6]; permanently enjoin Defendants; permanently enjoin Defendants; award Plaintiff trebled lost profits consistent with 35 U.S.C. § 284; award Plaintiff pre-judgment interest and post-judgment interest on the above damages awards; and grant such further relief as this Court deems appropriate.  Plaintiff additionally requests that this Court order the Third Party Service Provider(s) and Financial Institution(s) to transfer Defendants' assets held by the Third Party Service Provider(s) and Financial Institution(s) to Plaintiff in partial payment of any default judgment entered against Defendants.

Respectfully submitted,

Dated:  January 22, 2025

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

---

[6] *See* n.3, s*upra*.

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 - Telephone
(412) 741-9292 - Facsimile